The first case for argument this morning is United States v. Sumeru. Counsel for the appellants, you may proceed. Thank you. Good morning, Your Honor. My name is Ben Coleman. I represent Mr. Sumeru. We're going to attempt to divide our time evenly, ten minutes apiece, and I'll watch the clock. And to the extent I have a little bit of time, I'll save it for later. Very well, counsel. Thank you. What I'm going to focus on today is the first issue raised in the brief, which is the challenge to the securities fraud counts. And what I'd like to do is actually start off with an argument that was one of the final arguments that we raised, which is that we believe the securities fraud counts are barred by the Supreme Court's recent decision in Morrison. And what Morrison instructs is that in order for there to be a securities fraud violation, the transaction must be in the United States. The alleged security must be sold or purchased in the United States. But they were offered in the United States. Go ahead. They were offered in the United States, were they not? Well, it's not entirely clear to me that offering would be enough. I think they actually have to be either really purchased or sold. I mean, the offer, I think, came from Grenada. Weren't there some meetings in Santa Barbara? There were certainly alleged fraudulent conduct throughout the United States, and we agree with that. We believe that the Supreme Court in Morrison rejected the government's contention that if there is a substantial amount of conduct, fraudulent conduct, in the United States, that that is sufficient for a securities fraud violation. What we believe of the Supreme Court held is that the securities, the alleged securities, have to either be purchased or sold in the United States. And in this case, what the individuals did is they set up entities or accounts in the Bahamas, and then the securities, which were Grenada certificates of deposit, were purchased from the Bahamas. So either the transaction occurred in Grenada or it occurred in the Bahamas, but it certainly didn't occur in the United States. So to the extent that there was conduct, fraudulent conduct, even, in the United States, we don't think that matters. We think that the actual purchase or sale had to occur in the United States. Putting that argument aside, we still, of course, have the contention that the instruments at issue here were not securities. And we believe that this Court in Wolf followed the Supreme Court's decision in Weaver, which held that certificates of deposits in a bank are not securities, and this Court extended that to certificates of deposits in a foreign bank. Is that raised below? The only thing that was raised below was a general Rule 29 motion, which we believe is sufficient to preserve the issue for appeal. And I don't believe the government has argued in their brief that, as far as the sufficiency of the evidence, that anything other than a de novo standard should apply. They haven't ---- Did you suggest to the district judge that these, that they had not proved that these were securities, or argue to the jury that these were not securities? I was not the trial lawyer, but that was not argued. I mean you. I mean your side. That was not argued at all. The government did not argue that they were securities. The defense did not argue that they weren't securities. They were more or less taken for granted that they were, as I understand what happened. Is that? That's correct. And we think actually the district court, when instructing the jury, basically told them that these are securities. And it's our position that the general Rule 29 motion, we believe, is sufficient to preserve de novo review. Suppose we disagree with you about that, that we review for plain error? Even if we ---- even if plain error review on a sufficiency claim applied, we still think that reversal would be required. The Supreme Court's decision in Weaver and this Court's decision in Wolf have been on the books for many, many years before the case, so we think that the error was plain. And this Court has held that when it comes to sufficiency of the evidence, the difference between plain error review and de novo review really isn't that great, because, of course, substantial rights are affected and the fairness of the proceedings are implicated if an invalid conviction is allowed to stand. So we don't necessarily think that the plain error review standard should alter the Court's analysis in any way. We do think that de novo applies, but even if the Court were to say plain error, we don't think it should affect it. Now, although the government did not make this argument below to the jury, they are now claiming that this Court can get around Weaver and this Court's prior decision on Wolf by finding that the instruments in this case were, quote, unquote, notes. We obviously think that because the jury was never instructed on a notes theory, that this Court should not be allowed to rely on a notes theory. How about investment contracts? The district court did instruct the jury on the definition of an investment contract, and the government has now put that as a default argument. We don't think that these are investment contracts under this Court's precedent. We don't think that there's any horizontal commonality or strict vertical commonality, which is the terms that this Court uses in this case for these to be securities under an investment contract theory. And we think that that would essentially be an end run around Weaver and this Court's decision in Wolf. So we think that for a variety of different reasons, Morrison, Wolf, and Weaver, and the failure for any of the government's theories now to be presented in the district court, that this Court should reverse the securities fraud counts. Now, of course, there are other counts of conviction, but at the very least, we think that the securities fraud counts of conviction should be reversed. What would that do to his sentence if, let's just say, for example, if we were to strike the securities fraud, the wire fraud counts would remain? Yeah. And assuming you affirm the wire fraud counts, then Mr. Sumaru has completed the custodial portion of the sentence. I don't think it would affect him at all. It doesn't matter. He's already been released. I'm not sure, and I haven't looked into whether the restitution would be affected or not. It probably would not, but I haven't really assessed that in great detail. So I don't think it would ultimately have a significant effect on the sentence. And like I said, he has been released. This is more of an academic question in a sense. I mean, you could hold his head up a little higher. By the time I got here, Mr. Sumaru had already been released from custody anyhow. Right. So we think that the court would be – but we do still think that, I mean, these are felony counts of convictions and that they should be reversed, and we think that's the appropriate course in this case. I see I have a few minutes, and unless there are any questions, I – I have a question, Mr. Coleman. Sure. I want to go back to the question that was asked of you by Judge O'Scanlan. He said, wasn't there an offer in the United States? And you said, well, there wasn't a sale in the United States. Is that your argument? My argument is that there either has to be a sale or a purchase in the United States. The statute says, however, in the offer or sale. So what do we do with the word offer in that statute? Well, I – my argument is based on the way Morris and I, I believe, interpreted that in this context, is that in the context of determining whether we have a United States securities transaction. Yes. That the actual purchase or sale, the Supreme Court didn't throw in there or offer to sell. But you're ignoring the word offer in the statute, and that is part of the crime, isn't it? Well, let's even assume that offers count. I'm just reading the statute. Assuming they count, we believe the offers in this case are made from Granada, which is where the instruments were being sold from. And there's nothing in the record to show an offer in the United States? Is that your argument? I don't believe so. I mean, there's conduct in the United States, but I don't know of anything as a specific offer, nor was the jury instructed that they had to find a specific offer for sale. All right. As far as Morrison goes, they were dealing with a different section, though, weren't they? The section Judge Allerton read is not the section that was at issue in Morrison. Morrison was dealing with a different section, but there's language in the opinion that says that its construction, which applies to the 1934 Act, I believe, is similar to the construction given to the 1933 Act, which is what we have here. Thank you. Thank you, Mr. Coleman. Co-counsel? Good morning, Your Honors. If it please the Court, Gretchen Fusilier on behalf of the appellant, Jerome Carroll-Pole. I have filed a 28-J letter, and I have flagged three different sections of it. The first flag indicates where the opinion begins, because the case of Global Tech Appliance v. CB was in the context of a civil litigation relating to a patent. However, the U.S. Supreme Court in May 2011 decided that case and raised willful blindness. So I have flagged where the willful blindness discussion begins, and that was discussed as a criminal doctrine, which is relevant to the issue raised by Mr. Hull. The principal argument that I will be addressing is the insufficiency of the evidence against Mr. Hull and the deliberate avoidance which the government has used and also was given as a jury instruction to substitute for actual knowledge evidence. Essentially, Mr. Hull's participation in furthering even a fraudulent scheme would not make him criminally liable unless he had the requisite criminal knowledge of the scheme. Now, the government does indicate that he did by certain comments that he made. However, Mr. Hull was making comments based on the due diligence that he had conducted of the First International Bank of Granada, which was, according to the government's witness, Wyde, who was the liquidator who was taking over all of the sub-banks. He indicated that the 13 or so sub-banks actually were like franchises of FIBG, the First International Bank of Granada, that funds from Satva were funneled or passed to FIBG because Satva, the bank that was created by Sumeru, was not allowed under the franchise, if you will, arrangement to handle the money. Consequently, Mr. Hull, who was not, by the way, involved in the creation of Satva, did go down to Granada with some of the investors who were there at the same time, Blakenship, Janelle, and I believe a few others, and together, according to even the government's documentation, conducted due process together. Now, of course, the Satva Bank had to meet certain requirements that were structured by the Granadian government, and the Granadian government set that up in 1996 under the Granadian Banking Act in order to attract enterprises and banking activity and spending in Granada. So it appears as though the documentation that Wyde, the liquidator who testified for the people, saw indicated that Sumeru did provide the appropriate documentation. Moreover, Wyde testified that he had actually seen a document confirming and verifying that Sumeru had $1.5 million in assets or in accounts, not just in assets, but in accounts, and that So the question becomes, what else could Mr. Hull have done in order to determine that Satva and or FIBG, essentially, were Ponzi schemes? We know from the evidence that FIBG had functioned for at least four years in the banking industry of Granada, selling CDs and paying interest to its investors. So that element of due diligence certainly would not have been able to raise a red flag. And when we look at the language used by the current U.S. Supreme Court decision in global tech, it indicates that you need an active conduct not to look for red flags in order to trigger the legal doctrine of deliberate avoidance or, as it related, it's used a synonymous term, deliberate blindness or willful blindness. So the government indicates, well, in July 2008, and I believe that's a typographical error. It should be July 2000, not 2008. The government says, well, Mr. Sumeru and Hull met with Ms. Nicholas. And at that point, we're still promoting the Satva or other high-yield investment instruments. Well, that's not actually the case. If we look at the transcript or the testimony of Nicholas in the government's supplemental excerpts of record, I believe that is at – well, I don't have the record number right now, the reference. But it's clear that Nicholas indicated when asked by the government what was said, and she said – she corrected herself. She said, oh, the only thing that was said is that IB, which was the international banking company that handled the creation of these international trusts that had to be created in order to invest in the CDs through the Grenadian sub-banks or the FIBG. That was the only thing that Nicholas indicated was discussed in July 2000. So we don't really have a comment, as the government would argue, to suggest that Mr. Hull and Sumeru were promoting a Satva. However, even if that were the case, we know that it wasn't until sometime in the early part of 2001, and maybe in 2008, I believe, an investigation began targeting FIBG. Van Brink, who was the mastermind of FIBG and the creation of all of the sub-banks, somehow disappeared to, I think, Uganda, some other places. He had absconded with a significant amount of cash. So we don't really have active, as the Jewell case said, someone needs to actively decide not to look for a red flag. We do not have that on the part of Mr. Hull in this case. Unless, I believe that – well, I think I still have some time. Are there any questions that the court has? No questions. You may reserve the remaining four minutes, if you wish. Yes, I would. Thank you very much. Thank you. We'll hear from the government. Good morning, Your Honors. My name is Cam Barker, and I represent the United States. If I may first address the question of whether the sale of CDs here occurred within the First, the statute in Morrison was Section 10B of the Exchange Act, and it applied to the purchase or sale of securities. In contrast, the statute here, which is Section 17 of the Securities Act, applies to fraud in the offer or sale of securities. So as the court's questions indicate, the statute here applies to offers, and there was sufficient evidence here for a reasonable jury to conclude that offers were made in the United States because dependents held meetings in Santa Barbara, pitched their products here, and mailed their promotional literature to investors here. Secondly, the sales here were not of securities traded on an exchange, which is, again, unlike in Morrison. So even if the court were to examine only the sale portion of the statute and write out the offer portion, there would still be sufficient evidence which the jury could find that the sales had a domestic component. Unlike in Morrison, where an exchange sale occurs in one locality, the traditional understanding of courts and applying conflicts of laws principles has been that a sale or an offer can occur in multiple localities when significant parts of that transaction happen there. And here the investor sent money from the United States in United States dollars, and they received the certificates of deposits in the United States as well. And for all those reasons, the jury could find that the sale here occurred in the United States and was domestic for that reason as well. How does this case get tried without any instruction to the jury that they have to find that these securities are securities, these alleged securities are securities? If I may just disagree that the court failed to instruct the jury that it had to find that. The jury instructions have to be read as a whole, and there's three parts of the instruction that are relevant here. The first is when the court lists one, two, three, here's the elements of the statute, and it includes as one of them that the defendants offered or sold the securities described in the indictment. But then the court later goes on to describe several of the offense elements and gives the definition for the statutory term security and then tells the jury that a security requires proof of an investment in a common enterprise with the expectation of profits to arise solely from the evidence of others. And so the defendants argue that the district court directed a verdict on the securities element of the statute, but they never raised that claim below. If they had any issue with the adequacy of the jury instructions, the district court was the place to raise that. And on appeal, that issue comes with this court under the plain error standard, and certainly it's not clear or obvious that read as a whole the instructions directed a verdict on that issue. As for the sufficiency claim, the defendants did make a Rule 29 motion, and that preserves their claim that the district court should have granted the motion for judgment of acquittal. However, that motion is gauged against the essential elements of the offense, and the jury, there was sufficient evidence here for a rational jury to find that the CDs here were securities, we proceeded below on an investment contract theory, and that's our main theory on appeal. In their opening brief, defendants argue that the instruments couldn't be notes. And in their opening brief, the defendants raised the four-factor Weaves test and tried to argue that this case falls outside of that test. That wasn't our argument below. That's not what the instructions to the jury were. We proceeded on an investment contract theory, but if we're getting into the notes theory, we went on that as well for the reasons explained in our brief. So I think the jury was not clearly or obviously corrected that it had to find these were securities, and there was sufficient evidence from which the jury could find that these met the definition of a security. Let me ask you about the wire fraud instructions. Do I understand correctly that you agree that the instructions were overbroad because they included concealment without proof of a fiduciary duty? No, we don't agree with that, Your Honor. The instruction at issue is the definition of misrepresentation, and the Court says that that can include a false statement or a knowing concealment with intent to defraud. If the defendants thought that that allowed them to be convicted on a pure omission theory, again, the time to object to that was below, and the issue comes to this Court under the plain error standard, under which any error in the instructions has to be clear or obvious. And we think that when the district court refers to a knowing concealment with intent to defraud, that at the very least was not clear or obvious that the judge was telling the jury it could convict upon finding any material omission. But even if the Court is unsure of that or just doesn't want to reach the issue of whether any error was clear or obvious, in any event, the instructional error, if it did exist, was harmless beyond a reasonable doubt. And defendants claim that this sort of error is a structural error, that this Court can't review for harmlessness, but that claim is foreclosed by the Supreme Court's decision in Polito, Hedgepeth v. Polito, which explicitly held that alternative theory error is not structural and is subject to harmless error review. And that's following the Supreme Court's long lines of cases, going back to Netter, Roy, and other cases that held that absent very limited exceptions, instructional error is subject to harmless error review. And so even if the district court did allow the jury to convict based on pure omissions, the evidence here was such that no jury could find that the defendants committed fraud only by making, by not saying things, rather than by making affirmative misstatements. There was overwhelming evidence here of the affirmative misrepresentations that the defendants made to investors, including that SOTVA was backed up by millions in assets and had its money secured by rubies and germs and other hard assets, that it had thousands of clients and had produced great results for them, that it had. Does this go for Mr. Hall as well? Yes, Your Honor. The question of whether the jury could sufficiently find that Hall had intent, had a fraudulent intent, is actually pretty straightforward because Hall was the managing director of the bank. He had access to all of the information. And although Hall says that he went through due diligence, the competing testimony on that point comes from the liquidator, who is Mr. Wyde. And he testified that anyone doing real due diligence would have raised numerous red flags. And so Hall's claim that he did due diligence and didn't see the flags is basically a credibility competition between Hall and Mr. Wyde, the liquidator. And the jury was entitled to believe Mr. Wyde because of the really preposterous nature of some of the claims this bank was making, such that it had gone from a few million in assets in one year to 15 billion in the next year, levels approaching Bill Gates' net worth. The fact that Hall made false statements to investors that the IDIC had insured the deposits. He falsely claimed that CDs were backed up by gold and diamonds. He gave the victims of the fraud conflicting excuses whenever they couldn't access their money. And all of that allows a rational jury, viewing the evidence in the light most favorable to the government, to conclude that Hall acted with the requisite fraudulent intent. Your question also perhaps relates to Hall's argument about the deliberate avoidance or ignorance instruction. And I received this morning the 28J letter about the Supreme Court's decision in Global Tech. As I read that opinion, neither of the two flaws that the court found there are present here. In Global Tech, the instruction allowed, or rather the Court of Appeals said that the standard allowed a finding of knowledge upon a known risk and deliberate indifference to that risk. In contrast, the instruction here required that defendants were aware of a high probability of the fact of the knowledge inquiry and deliberately avoided it. And so even if defendants had preserved their claim, there would be no basis for finding error in the deliberate ignorance instruction. But in any event, that claim, too, was forfeited because there was no objection below. Unless the Court has any questions, I'm happy to rest on our briefs and submit. No questions. Thank you, Counsel. Who's going to respond? Mr. Coleman, you might want to follow up on the point raised by Judge Silverman with respect to The Wire Fraud Council? Yeah. Yes, I was going to. Judge Silverman, I think there The instruction. Yes, yes. Or perhaps the lack of instruction. I'm going to get to the Wire Fraud Council instruction and the Securities Fraud Council instruction. I want to address both. I'll take the Wire Fraud first, and I think there was some confusion of the different instructions for the different counts and the different arguments that have been made. The first is the government has now said that as to the Wire Fraud counts now, as to those counts, that it's plain error review that governs. But they didn't make that argument in their brief, and they've waived it. And in fact, on page 39 of the government's brief, as to the Wire Fraud counts, they claim that de novo review governs. So we believe they've waived any argument that plain error review applies. It's too late in the day to do that. The second issue is that the government is claiming that you can apply harmless error review to the Wire Fraud counts. And our position has been, and I still don't think the government is disputing it, that the jury was instructed on a concealment theory or an omissions-type theory. There was no fiduciary relationship here between the defendants and the victims. And therefore, that theory is invalid. And what the Supreme Court has held in a case called Griffin, which this Court has followed on repeated occasions, and we've cited those in our briefs, is that when there is an invalid legal theory of liability that's instructed to the jury, that harmless error review does not apply and that reversal is required because when there's a general verdict, which is what we have here, because there's no way to tell what theory, legal theory, the jury relied upon in returning its verdict. So it's our position here that, A, the government has waived any claim of plain error review. And, in fact, in their brief at page 39, specifically say de novo review. Well, I mean, the standard of review is the standard of review. We're not bound by what the lawyers, how the lawyers analyze what the standard of review is. I mean, we'll apply whatever standard of review applies. They don't pick it and you don't pick it. We pick it. Well, I think there are cases where this Court has held, both in sort of the waiver and forfeiture context, that if an opposing party doesn't raise the claim in their briefs, that we're not going to be able to review it. You said if you took the position that we review for plain error, but we really should review de novo, we'd review de novo. I mean, it's a leap. I don't know. I've seen plenty of cases where I make a claim in my brief and I get stuck to it, whether it's right or wrong. The Court says the defendant concedes X, and therefore we're applying X. But even if plain error review did apply, we believe under the Supreme Court's precedent that when an invalid legal theory is given to the jury and there's a general type review, because we don't know what the jury returned their verdict on. So that's as to the wire fraud counts. As to the security fraud counts, and to answer Judge Silverman's questions on those, one thing that the government said just now is that the district court instructed the jury that they have to find proof of an investment contract. And the word proof is never in the jury instructions. What the district court did, and I know the Court is probably aware of this, but perhaps it bears repeating, is that it specifically says in its instructions when describing the elements, first, the defendant offered or sold the securities described in the indictment, so telling the jury that these are securities, and then repeatedly goes on to refer to the securities in the indictment as if they are securities. Now, after doing that, it gives the definition of the term security, but it doesn't tell the jury you have to find that what we're dealing with meets that definition. And then with respect to the investment contract definition, it just says a security requires an investment of money in a common enterprise, an expectation of profits to be derived solely from the efforts of others. It does not say, as the government just argued, a security requires proof of that. It just defines what a security is. So it's our position that there were no instructions requiring the jury to find that these were securities. I think the government concedes that that's clearly the law and that that error is plain. And given the closeness of the issue here as to whether or not these are securities, we think that even under a plain error review standard, which we agree applies to the securities fraud case, reversal is required. And I'm just about out of time. Thank you, counsel. The case just argued will be submitted for decision. And we'll hear argument next. Oh, excuse me. She wanted to say something. Your time has expired. You consumed all the time for your side. Okay. Thank you. The case just argued will be submitted for decision.
judges: Alarcon, O'scannlain, Silverman